[Civ. No. 4115. Fourth Dist. May 16, 1950.]

JEROME PIKULINSKI et al., Minors, Appellants, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY (a Corporation) et al., Respondents.

Mildred Murphy and Dorothea Mesny for Appellants.

Robert W. Walker and Louis M. Welsh for Respondents.

MUSSELL, J.—Plaintiffs are the surviving widow and minor children of Raymond Aloyius Pikulinski, deceased, and Walter Boysha, who was a passenger in a Ford automobile being driven by Raymond Aloyius Pikulinski at the time it collided with the Atchison, Topeka & Santa Fe Railway's Super Chief train at the Sierra Avenue crossing in Fontana, in San Bernardino County.

The action was tried by the court without a jury and judgment was entered for defendants. From this judgment plaintiffs appeal on the ground that the evidence is insufficient to support the trial court's findings and judgment.

FACTS

The accident occurred at approximately 7:26 o'clock a. m. on April 10, 1947, at the crossing named. Sierra Ave-

nue is the main street of Fontana and is a paved, public highway running in a general northerly and southerly direction. Defendant Santa Fe's main line runs in a general easterly and westerly direction and intersects said Sierra Avenue at grade. At the time of the collision, the train was traveling in a westerly direction at a speed of approximately 70 miles per hour. The decedent was traveling south on Sierra Avenue and was driving his Ford at approximately 30 miles per hour, when he passed a car being driven by witness Nelson, approximately 220 feet north of the railroad tracks. When the decedent's car passed Mr. Nelson, a third car, also being driven at about 30 miles per hour, passed on Nelson's east or left side. At this point Nelson noticed an automobile facing in a northerly direction, stopped just south of the south rail of the railroad tracks where said tracks intersect Sierra Avenue. When Nelson was in the vicinity of the intersection of Orange Way and Sierra Avenue, approximately 250 feet north of the tracks, he glanced up toward the automatic signal and saw that it was operating, the bell in the wigwag was ringing, the arm was swinging and the light in the round disk at the end of the arm was burning. Nelson gradually began to decrease the speed of his automobile and he started to slow down, the Pikulinski car and the third car passed him, as stated. Nelson came to a full stop before the locomotive entered the intersection. Nelson testified that the Pikulinski automobile began to slow down as it approached the tracks and that he was under the impression that the car had come to a complete stop when it suddenly swung about after striking the locomotive of the train.

Defendant Murray, who was the locomotive engineer, testified that when approximately a quarter of a mile east of the intersection he began a series of four blasts of the locomotive horn; that he had the automatic bell ringing on the locomotive and the headlight was burning for increased visibility; that when he was approximately 30 feet from the crossing, he had finished the last of the four signals; that the crossing was then clear; that there was a car standing just north of the crossing, headed south; that when the cab was approximately in the middle of the crossing, he saw another car moving quite fast "for the situation." He looked back to see if the vehicle was going to get stopped and saw a big cloud of dust and dirt. He then applied the brakes and stopped the train.

The fireman testified as to the sounding of the signals by

engineer Murray; that prior to the time the train entered the crossing, he saw two cars parked on the south side of the crossing, facing north, and saw a car stopped ''back a ways from the crossing'' on the north side of the track. He saw the wigwag operating before the train entered the crossing, the bell was operating with the automatic bell ringing and the headlight was burning.

The evidence shows that the deceased collided with the middle portion of the second diesel unit of the train at a point approximately 65 feet from the front end of the locomotive.

A traffic officer testified that from a skid mark 36 feet long, found on the pavement just north of the tracks, he concluded that only one of the four brakes on the decedent's automobile was operating efficiently.

There was testimony that at the time of the accident a round ''Automobile Club crossing sign'' was in plain view at a point 350 feet north of the railroad track; that at a point about 190 feet from the track a crossing sign ''R X R'' was painted on Sierra Avenue in white; that on the northwest corner of the intersection of the railroad tracks and Sierra Avenue was a standard number one crossing sign; that the crossing was equipped with an electrically operated wigwag signal on the southeast corner of the crossing; and that said signal was set in operation when the locomotive was 3,271 feet east of the wigwag signal.

There was testimony that the decedent was thoroughly familiar with the crossing and had traversed it each day going to and returning from work during the four months prior to the date of the accident.

The photographs and diagram introduced into evidence indicate that a traveler on the highway at a point 70 feet north of the north rail of the railroad track can see 600 to 700 feet toward the east along the railroad track; and that a traveler on the highway 50 feet north of the north rail can see a distance of at least a quarter of a mile to the east along the track.

There was testimony that the wigwag mechanism was inspected by an employee of the railway company after the accident and it was found to be in good condition.

Upon the foregoing evidence, the trial court concluded that the defendants were not negligent and that the failure of decedent to heed the warnings was the proximate cause of the accident. We are impelled to conclude that the evidence was

sufficient to support the findings and judgment of the trial court.

As stated in *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]:

"The rule as to our province is: 'In reviewing the evidence. . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' (*Crawford* v. *Southern Pacific Co.* (1935), 3 Cal.2d 427, 429 [45 P.2d 183].)"

It is contended that the train was being operated at an excessive rate of speed. In this connection, the evidence shows that Fontana is unincorporated and there is no statute or ordinance fixing or limiting the speed of defendant company's trains through the area. Whether or not defendants operated the train at a speed so dangerous or excessive as to constitute negligence was one of fact for the trial court. (*Young* v. *Pacific Electric Ry. Co.*, 208 Cal 568, 573 [283 P. 61].) Likewise, the questions of proximate cause, whether the defendant company maintained adequate warning devices and whether defendants were negligent, were all for the determination of the trial court, and where, as here, its decision is supported by substantial evidence, an appellate court will not interfere.

The finding of the trial court that "Mr. Pikulinski, apparently oblivious to the warnings being heeded by other motorists, drove into the side of the train" is supported by the evidence and in the circumstances here shown, plaintiffs cannot recover. (*Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 P. 788].)

Judgment affirmed.

Griffin, Acting P. J., and Shepard, J. pro tem., concurred.